SAM A. BEATTY, Retired Justice.
J.F.J. appeals from judgments terminating her parental rights as to her two minor children, A.H. and G.A.H., Jr., and granting their permanent custody to the Alabama Department of Human Resources (“DHR”). The children’s father was also a party in these termination cases, but he did not appeal. We affirm.
The evidence reveals that the mother has had a serious problem with alcohol and drug abuse for many years and that the children have been removed from her custody on several occasions. DHR began working with the mother in July 1982 when it received a report that she had abused her oldest child, J.C.J., whose custody is not at issue in this case.[1] G.A.H., Jr., and A.H. were born in 1987 and 1988, respectively. In 1989 and 1990, following another report that the mother had abused her oldest child, DHR provided homemaker services for her in an effort to help her with parenting skills and arranged for her to attend an inpatient substance abuse program. The mother and the children’s father began experiencing marital difficulties in late 1990 and were divorced.
The children were removed first irom the mother’s custody in May 1991, when they were placed temporarily with their paternal grandparents. They were returned to the mother early in 1992 after she complied with the requirements established by the court and DHR. In May 1992, the children again were removed from the mother’s custody after she had a fight with her boyfriend and was left without housing or resources. DHR was awarded temporary custody of the children, and it retained legal custody when they were returned to the mother the following month. On September 3, 1992, the DHR social worker assigned to the mother’s case visited her home unannounced and found the children unattended and the mother unconscious and smelling of alcohol. The social worker placed the children in an overnight shelter. The mother also had an automobile accident in September in which she reportedly was intoxicated; the children were passengers in the automobile. In October 1992, the children stayed with their father while the mother served a 14-day jail sentence for D.U.I. They returned to the mother’s custody after her release.
In March 1993, the children again were removed from the mother’s custody after their babysitter reported to DHR that the mother had sold everything in her house for money to buy drugs and that she was using crack cocaine. On this occasion, the children were placed with a paternal great-aunt. In *628 May 1993, the mother completed a residential treatment program, began visiting with the children, attended counseling, secured employment, and established a home. In June 1994, after the mother had accomplished the goals set for her by DHR and after she had remained sober for approximately a year, the children were returned to her custody. In September 1994, however, the mother relapsed into drug use. She contacted DHR and admitted that she had resumed using drugs and needed help. The children were removed from her custody yet again, but on this occasion they were placed into foster care because relatives refused to accept their placement. The mother’s relapse apparently occurred in part because of problems in a relationship with a rehabilitation counselor with whom she had developed a personal relationship. The mother, who was on parole at the time, was placed in jail for violating the terms of her parole, but she continued to correspond with DHR and continued her involvement with her counsel- or/boyfriend.
In November 1994, DHR received a report that the mother’s boyfriend had sexually abused the children before they were removed from her home. After investigation, DHR found that the report of sexual abuse was “indicated” and that there was reason to suspect that the boyfriend was the perpetrator. At that time, the mother refused to believe that her boyfriend had abused the children.[2] A DHR worker testified that the mother had no contact with DHR from December 1994 until June 1995, but the mother disputed that testimony. During that time, she and her boyfriend were married. In June, the mother and her new husband came to the DHR office to report her present circumstances. She stated that she had moved to a different city, had completed a treatment program, was attending counseling, and wanted to work toward reunification with her children. In July 1995, the mother reported to DHR that she had filed for a divorce from her husband, that she had realized he was taking advantage of her illness, that she had changed her opinion about him and realized that the allegations against him might have been true, and that she wanted DHR to reopen the case against him. In August 1995, DHR filed a petition for the permanent custody of the children.
The mother is 33 years old. At the time of trial, she testified that she was living in a two-bedroom trailer and was working as a grocery store cashier. She had applied for a grant to allow her to study cosmetology. She stated that she attended church regularly, participated in weekly out-patient sessions at her substance abuse treatment facility, and attended AA or NA meetings during the week. She had been sober and drug-free for five months, she said, as of December 2, 1995. The mother testified that she believed her situation was different this time because she had moved away from the environment where she previously had used drugs, she had a stable support system composed of treatment facility personnel, co-workers, and church members, and she was receiving treatment and medication for her underlying depression for the first time. She admitted that she could not say that she would' never relapse again, but said she believed that as long as she kept her focus on sobriety and stayed in a positive environment she would be all right. She also reported that she now has a strong incentive to stay off drugs and alcohol because she has contracted hepatitis-C, a liver disease for which there is no cure, but for which she is to begin medication. Because of that disease, she said, she knows that if she ever abuses drugs or alcohol again, she will die.
The mother’s oldest child, who was in the custody of the Department of Youth Services at the time of trial, is visiting with her on passes and is scheduled to return to her home soon. She expressed love for her ehil- *629 dren and the hope that she could be reunited with all three. The mother maintained consistent communication with her children during the times they were not in her custody, except for the period of time after DHR received the report alleging sexual abuse by the mother’s boyfriend.[3] She did not, however, pay the child support required of her during the children’s placement in foster care.
The children presently reside in a therapeutic foster home and are reported to be doing exceptionally well. DHR has begun maMng plans for their permanent placement upon the conclusion of these proceedings.
The termination of parental rights is a serious matter and is not considered lightly. Although a parent has a prima fade right to the custody of his or her child, this right can be overcome by clear and convincing evidence that the child’s best interests would be served by removing the child from the parent’s custody. M.H.S. v. State Dep’t of Human Resources, 636 So.2d 419, 421 (Ala.Civ.App.1994). A consideration of the best interests of the child is fundamental to every proceeding to terminate parental rights. Id. In determining the child’s best interests, the trial court must consider whether a party to a custody proceeding is physically, financially, and mentally able to care for the child. J.L.B. v. State Dep’t of Human Resources, 608 So.2d 1367, 1368 (Ala.Civ.App.1992).
In cases in which a nonparent has instituted termination proceedings, the trial court’s decision is governed by a two-part test. Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990). The first prong of this test requires the trial court to determine that the child is dependent, based upon clear and convincing evidence. J.L.B., 608 So.2d at 1368. The second prong of the test requires the trial court to consider and reject all alternatives to termination of parental rights in order to conclude that termination is in the best interests of the children. Id.; Beasley, 564 So.2d at 954-55. On appeal, the trial court’s judgment in this regard is presumed correct, and it will not be reversed by this court unless it is so unsupported by the evidence that it is plainly and palpably wrong. M.H.S., 636 So.2d at 421.
The trial court made both requisite findings in these eases. It first determined that each child was dependent. It then concluded that no less drastic alternative to termination of parental rights was a viable option in either case. In so concluding, the trial court stated in each ease:
“3. That from clear and convincing evidence the court finds that the mother and father of said child ... are unable or unwilling to discharge their responsibility to the child, in that said child was removed from the home due to drug addiction of the mother of the child; that during said time the [father’s] last known address was the Russell County Jail, and that reasonable efforts by the Department of Human Resources to rehabilitate the mother and father of the child have failed and that no less drastic alternative is available to the court.
“4. That said child is not in the physical custody of the mother or father; that the mother and father have failed to provide for the material needs of the child or pay a reasonable portion of his support when able to do so, that they have failed to maintain regular visits with the child, have failed to maintain consistent contact or communication with the child and have further displayed a lack of effort to adjust their circumstances to meet the needs of the child.”
Section 26-18-7, Ala. Code 1975, a part of the Child Protection Act, provides that the trial court may consider, among other things, the following factors in concluding that a parent is not a viable alternative for the custody of a child:
*630 “(a) If the court finds from clear and convincing evidence, competent, material and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
[[Image here]]
“(2) Emotional illness, mental illness or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of such duration or nature as to render the parent unable to care for needs of the child;
[[Image here]]
“(6) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.
“(b) Where a child is not in the physical custody of its parent or parents ..., in addition to the foregoing, [the court] shall also consider, but is not limited to the following:
“(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
[[Image here]]
“(4) Lack of effort by the parent to adjust his circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
We conclude that there was clear and convincing evidence before the trial court supporting the judgment terminating the parental rights of the mother. DHR has been directly involved with these children since 1991, when they first were removed from their mother’s custody. Thereafter, DHR made repeated efforts to rehabilitate the mother and reunite her with the children, only to take custody of the children again each time. None of those efforts has succeeded, principally because of the mother’s substance abuse problem. Nor can the trial court be placed in error for not granting the mother custody based on the speculation that she will succeed at her latest attempt to achieve sobriety and abstinence from drugs and will be able to maintain a home suitable for the upbringing of these children.
This case is distinguishable from Bowman v. State Dep’t of Human Resources, 534 So.2d 304 (Ala.Civ.App.1988), cited by the mother. In Bowman, there was no evidence of neglect other than the mother’s inability to buy food and pay utility bills at times because of her lack of stable employment. DHR sought the termination of her parental rights as to her five-year-old daughter, but not her three-year-old son. We concluded that the mother’s failure to bring her standards of living up to the level desired by DHR, without more, was insufficient to terminate her parental rights. In this case, there is more evidence to support the termination of the mother’s parental rights. Clearly, the mother’s substance abuse problem, not her economic circumstances, led to her inability to care for the children and to their removal from her custody five times in a three-year period. We applaud the mother’s current efforts at rehabilitation and encourage her to continue those efforts, both for her own sake and for the sake of her oldest child. Nevertheless, the trial court’s paramount consideration, and ours, is the best interests of the children. We cannot say that the trial court was plainly and palpably wrong in concluding that their best interests will be served by allowing DHR to proceed with its plans for their permanent placement, rather than subjecting them to being uprooted yet again if the mother suffers another relapse.
*631 Accordingly, this court concludes that the trial court heard clear and convincing evidence supporting its findings that these children were dependent, that it was in their best interests to terminate the parental rights of the mother and the father, and that no less drastic alternative was reasonable or available.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN and MONROE, JJ., concur.

. Because this case concerns the termination of the mother's parental rights only as to G.A.H., Jr., and A.H., references to "the children” shall refer to G.A.H., Jr., and A.H., not to J.C.J.

. One of the social workers assigned to the mother's case in late 1994 had been arrested because he was alleged to have traded drugs for sex with some of the teenagers with whom he worked. The mother inquired whether he could have been responsible for the abuse of her children, but was advised that he had not taken advantage of younger children. Although this court finds appalling such conduct from one whose responsibility was the protection of the children with whom he worked, there is no evidence that this social worker ever engaged in any inappropriate conduct with A.H. or G.A.H., Jr.

. DHR did not allow the mother to communicate with the children during the investigation of the sexual abuse report in order to eliminate the possibility that the mother might have attempted to persuade the children to recant their testimony about the abuse. DHR allowed the mother to begin writing to the children again after she divorced the alleged perpetrator of the abuse, but she has not been allowed to see them. The children have not written to her since she was told of their abuse.